IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELVA JEAN STANLEY,

    Plaintiff,

v.                                                                                                     1:15-cv-00834-LF

NANCY A. BERRYHILL,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Elva Jean Stanley's Motion to Reverse and Remand (Doc. 20), which was fully briefed June 29, 2016. *See* Docs. 24, 26, 27. The parties consented to my entering final judgment in this case. Docs. 4, 11, 12. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to do a proper function-by-function analysis. I therefore GRANT Ms. Stanley's motion and remand this case to the Commissioner for proceedings consistent with this opinion.

    **I.**    **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Stanley was born in 1971, completed an associate's degree in accounting, and worked for approximately ten years in health care services as a communications coordinator and a receptionist. AR 29, 30, 32.[4] Ms. Stanley initially injured her back at work in 1998, when a chair rolled out from under her, causing her to fall hard on her buttocks on the floor. AR 656. She stopped working on September 11, 2007 because of her back pain and also because she had difficulty getting along with her supervisor. AR 33, 198, 205. Ms. Stanley filed applications for

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 15-1 through 15-24 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than the CM/ECF document number and page.

disability insurance benefits ("DIB") and supplemental security income ("SSI") on December 31, 2012, alleging disability since September 11, 2007 due to lower back problems. AR 198–210, 285.[5] The Social Security Administration ("SSA") denied her claims initially on March 12, 2013. AR 54–77. The SSA denied her claims on reconsideration on July 31, 2013. AR 80–103. Ms. Stanley requested a hearing before an ALJ. AR 125–27. On June 26, 2014, ALJ Christopher H. Juge, in Metairie, Louisiana, held a hearing via video teleconference. AR 26–51. Ms. Stanley appeared from Arizona, represented by attorney Michelle Baca. AR 28. ALJ Juge issued his unfavorable decision on August 27, 2014. AR 8–25.

The ALJ found that Ms. Stanley was insured through December 30, 2012. AR 13. At step one, the ALJ found that Ms. Stanley had not engaged in substantial gainful activity since September 11, 2007. *Id.* Because Ms. Stanley had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two. AR 13–14. At step two, the ALJ found that Ms. Stanley suffered from the following severe impairments: degenerative disc disease and obesity. AR 13. The ALJ found Ms. Stanley's depression to be non-severe. AR 14. At step three, the ALJ found that none of Ms. Stanley's impairments, alone or in combination, met or medically equaled a Listing. AR 14–15. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Stanley's RFC. AR 15–18. The ALJ found Ms. Stanley had the RFC to perform the full range of light and sedentary work. AR 15.

At step four, the ALJ concluded that Ms. Stanley was able to perform her past relevant work ("PRW") as a receptionist. AR 18. Even though the ALJ found that Ms. Stanley could do her PRW at step four, the ALJ also made "alternative findings for step five," finding Ms. Stanley

---

[5] Ms. Stanley filed previous applications for DIB and SSI on January 14, 2010. AR 52–53. SSA denied these applications on March 15, 2010. *Id.* These applications are not at issue. Doc. 20 at 2 n.3.

4

not disabled under Medical-Vocational Rule 202.21. AR 19. On September 23, 2014, Ms. Stanley requested review by the Appeals Council. AR 7. On August 17, 2015, the Appeals Council denied the request for review. AR 1–6. Ms. Stanley timely filed her appeal to this Court on September 22, 2015. Doc. 1.

### IV. Ms. Stanley's Claims

Ms. Stanley raises several arguments for reversing and remanding this case: (1) the ALJ failed to do a proper function-by-function analysis; (2) the ALJ failed to support his RFC finding with substantial evidence; (3) the ALJ failed to weigh the opinion of treating psychiatrist Dr. Wong; (4) the ALJ failed to adequately consider her limitations from depression and pain; (5) the ALJ considered improper factors in his RFC determination; (6) the ALJ erred at step four by not assessing the duties of Ms. Stanley's past relevant work; (7) the ALJ erred in relying on the grids at step five without considering Ms. Stanley's nonexertional impairments. Because I remand based on the ALJ's failure to do a proper function-by-function analysis, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### V. Analysis

#### A. The ALJ failed to do a proper function-by-function analysis.

Ms. Stanley argues that the ALJ failed to do a proper function-by-function analysis and failed to support the RFC "with a reasoned discussion of the evidence." Doc. 20 at 21. Specifically, she argues that the ALJ erred in determining that she could perform a full range of light and sedentary work without adequately considering limitations in her ability to sit, stand, and walk. Doc. 20 at 7. For the reasons discussed below, I agree.

Step Four of the sequential evaluation process is comprised of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

5

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual function capacity (RFC), . . . and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. . . . In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. . . . At each of these phases, the ALJ must make specific findings.

*Id*. (internal citations omitted).

An "RFC determines a work capability that is exertionally sufficient to allow performance of at least substantially all of the activities of work at a particular level." SSR 83-10, 1983 WL 31251, at *2. It is a reflection of "the maximum amount of each work-related activity the individual can perform," and the ALJ must describe the "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*.

An ALJ may not initially express an RFC in terms of "sedentary," "light," "medium," "heavy," and "very heavy,"—the exertional levels of work. *Id*. at *3. To ensure accuracy, "[t]he RFC assessment must *first* identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id*. at *1 (emphasis added). The ALJ may express the RFC in terms of exertional levels only after performing a function-by-function analysis. *Id*.

A function-by-function assessment is the description of an "individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." *Id.* at *7. Without this initial step "an adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the

individual has limitations or restrictions that he or she does not actually have." *Id*. at *4. The ALJ is required to address "an individual's limitations and restrictions of physical strength and define [ ] the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing and pulling." *Id*. at *5. For example, "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours." *Id*. "Each of the seven strength demands must be considered separately." *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003) (unpublished) (citing SSR 96-8p at *3–4).

A job falls in the "light work" category when it "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); *see also* SSR 83-10, 1983 WL 31251, at *5. Additionally, "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). Sedentary work requires sitting a total of 6 hours in the day. SSR 83-10; *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993).

The record is replete with both subjective and objective evidence indicating that Ms. Stanley has limitations in her ability to sit, stand, and walk. Ms. Stanley testified at the hearing that she left her job at Rehoboth McKinley Christian Health Services in part because "I couldn't sit very long and I couldn't stand for that long and walking was difficult for me also." AR 33. She testified that she stopped looking for jobs because it "was difficult for me to be able to concentrate with the pain medication that I was taking, and also because of the sitting, standing, lifting, and walking that I couldn't do for very long." AR 33. She testified that she continued to

have these symptoms and limitations as of the date of the hearing, June 26, 2014. AR 34. She testified that she was taking oxycodone and tramadol to control her pain, but that even on these medications, her pain was exacerbated by sitting, standing, or lying down for extended periods. AR 34–35. Ms. Stanley estimated that she needed to alternate sitting and standing approximately every 15 minutes. AR 35. She testified that she could only walk two to ten feet before she needed to rest. AR 35–36. In an undated Adult Function Report, Ms. Stanley stated that she could not sit, stand, or lie down for long, and that walking caused pain. AR 267–70. She further reported that sitting, standing, or bending for long periods of time caused pain. AR 271.

Ms. Stanley reported these same limitations to numerous healthcare providers over a period of years. On December 17, 2007, Ms. Stanley complained to her physical therapist at Fort Defiance Indian Health Rehabilitation Services Department of central lower back pain, aggravated by sitting or standing too long, and by transitioning from one position to another. AR 427. On November 11, 2009 she reported to a medical provider that she got tired and stiff when walking long distances. AR 541. On September 17, 2017, Ms. Stanley was seen in the Fort Defiance Outpatient Clinic for back pain, possibly triggered by hauling water, and the doctor noted in his objective findings that she had "obvious moderate distress especially while walking but also while sitting." AR 868. On January 5, 2011, after suffering a fall on the steps of her house, Ms. Stanley reported that the following factors aggravated her pain: "difficulty and sever[e] pain with sitting, difficulty xfering up into standing [after] prolonged sitting." AR 775. In her objective observations, the physical therapist noted that Ms. Stanley was "unable to sit without constant readjusting. bed mobility and supine to sit xfers. painful and guarded. severe pain with ant. and L lateral shift of coccyx. pt. bracing with all movements." AR 775. On April 7, 2011, complaining of back pain not caused by injury or trauma, Ms. Stanley reported that

sitting, lying down, and lifting aggravated her pain. AR 803. The provider noted that Ms. Stanley was "unable to sit straight on the chair, [and was] shifting constantly." *Id.* On October 5, 2011, Ms. Stanley reported that cold weather caused her chronic back pain to be a 6/10 on the pain scale. AR 757. The doctor's objective findings included "notable antalgic gait and posture." AR 757. On October 6, 2011, Ms. Stanley reported that her back pain was increased with "sitting, lying down, walking, and standing." AR 754. The physical therapist noted in her objective findings that Ms. Stanley had "[bilateral] shoulder internal rotation, increased thoracic kyphosis, and [forward] head posture." AR 754. On December 26, 2012, Ms. Stanley saw a pain specialist, and reported that her back pain was "exacerbated by prolonged sitting." AR 580. The pain doctor administered a straight leg test on the right, and was able to reproduce the leg pain and the tingling in the toes. *Id.*

Despite numerous indications in the record that Ms. Stanley has limitations in her ability to sit, stand, and walk—the ALJ never completed a function-by-function analysis. This is legal error and requires remand.

The Commissioner argues that, under *Hendron v. Colvin*, 767 F.3d 951, 956–57 (10th Cir. 2014), the ALJ was not required to do a function-by-function analysis. Doc. 24 at 10–11. *Hendron*, however, is distinguishable. In *Hendron*, the court held that the ALJ did not err by finding that Ms. Hendron could perform a "full range of sedentary work" without an "explicit function-by-function analysis." *Hendron,*, 767 F.3d at 956. But the reason the court in *Hendron* did not require an explicit function-by-function analysis was because there was no evidence supporting a limitation on Ms. Hendron's ability to sit during the relevant two-month time period; therefore the analysis was not critical to the outcome of the case. *See id.* at 956–57. Here, however, the relevant time period spans several years, and an explicit function-by-function

9

analysis is critical to the outcome of the case.⁶  Therefore, the ALJ's failure to perform a function-by-function analysis with regard to Ms. Stanley's ability to sit and stand is legal error.

The Commissioner focuses most of her brief discussing the ALJ's assessment of Ms. Stanley's credibility. Doc. 24 at 5–8. However, as Ms. Stanley argues in her reply, "[t]he ALJ's determination regarding Ms. Stanley's credibility cannot substitute for a proper RFC determination, which is lacking in this case." Doc. 26 at 5 (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1991)). "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996). The ALJ correctly stated that, under SSR 96-7p⁷, "whenever statements about the intensity, persistence, *or functionally limiting effects* of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record." AR 15 (emphasis added). But despite Ms. Stanley's repeated reports of functional limitations in her ability to sit, stand, and walk due to her back pain, the ALJ never performed a function-by-function analysis of these limitations.

---

⁶ The other case the Commissioner cites, *Morphew v. Colvin*, 12cv1467, 2014 WL 1373893 (D. Kan. Apr. 8, 2014) (unpublished), is similarly distinguishable. *See* Doc. 24 at 11. In that case, the judge found the ALJ's failure to do a function-by-function test harmless because plaintiff did not argue that the ALJ failed to consider or apply "any particular functional limitation." *Id.* at *12. In this case, however, Ms. Stanley argues that the ALJ failed to consider and apply functional limitations in her ability to sit, stand, and walk.

⁷ SSR 96-7p was replaced by SSR 16-3p during the pendency of this appeal. SSR 16-3p eliminated the use of the term "credibility" to clarify that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1. Both SSRs direct the ALJ to consider an individual's statements about the intensity, persistence, and limiting effects of symptoms. SSR 96-7p, 1996 WL 374186, at *1; SSR 16-3p, 2016 WL 1119029, at *4. Both SSRs also direct the ALJ to apply the same seven regulatory factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *3; SSR 16-3p, 2016 WL 1119029, at *7.

In his decision, the ALJ noted that Ms. Stanley testified about many limitations at the hearing:

> The claimant alleged that she could not sit or stand for long periods, had difficulty walking, and was on pain medication that made her drowsy. The claimant testified that she continued to have back issues at the time of the hearing, and she indicated that she has undergone physical therapy, received back injections, and participated in pain management. The claimant testified that she is able to sit for 15 minutes, stand for 15 minutes, and walk 5 feet. She admitted that she lifts and carries wood, coal, and water because these activities are necessary for "survival," but she indicated that these activities increase her pain symptoms. The claimant testified that she naps twice a day due to her pain medications.

AR 15.

The ALJ dismissed these reported functional limitations, without doing a function-by-function analysis, with a blanket assertion that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR 15. The ALJ purports to dismiss Ms. Stanley's testimony about her functional limitations based on her physical exam findings and reported activities. AR 15–16. However, the ALJ fails to point to anything specific in Ms. Stanley's physical exam findings or reported activities showing that she was not limited in her ability to sit, stand, or walk for prolonged periods. The ALJ claims that Ms. Stanley only reported pain and had abnormal physical exam findings at her physical examinations after "she performed housework, outside work, and lifting and carrying activities" or after "a fall or heavy lifting and carrying of objects, such as wood, water, and coal." AR 16. The record, however, indicates that Ms. Stanley did not only suffer from episodes of acute back pain caused by medium to heavy exertion or falls. While the record does show that exertion exacerbates her pain, the record is also replete with diagnoses of "chronic back pain." *See* AR 583 ("chronic radicular distribution of symptoms"), 717 (assessing "chronic low back pain"), 728–30 (noting claimant has "acute and chronic low-back

pain" and assessing "[c]hronic low back pain with radicular pain in L4 and L5 on right"), 754 ("she now has acute low back pain with sciatica on top of her chronic DDD/DJD lumbar disease"), 773 (provisional diagnoses of "chronic back pain"), 815 (assessed with "chronic back pain), 900 ("chronic back pain with depression and other psycho-social confounders"), 1001 (lumbar spine x-rays ordered for "acute and chronic low back pain"). Ms. Stanley's treating physicians also found her pain to be legitimate. Her treating physician stated, "I feel her pain is legitimate," AR 817, and the pain specialist found that Ms. Stanley had a "legitimate chronic pain syndrome," AR 529.

The Commissioner argues that the fact that Ms. Stanley complained of "more severe pain after carrying out heavy chores like carrying water over two miles to her rural home" is "evidence that [she] was capable of at least sedentary work . . . ." Doc. 24 at 6. This argument is a non sequitur. At best, this evidence shows that Ms. Stanley is incapable of doing work which requires her to do heavy lifting and carrying, or walking long distances. It says nothing about her ability to meet the sitting, standing, or walking requirements at the light or sedentary level. The fact that she does not have any doctor's visits for exacerbations of back pain due to prolonged sitting may merely reflect that she is not currently required to sit for prolonged periods, but it does not demonstrate that she *can* sit for 6 out of 8 hours. *See Thompson*, 987 F.2d at 1491 (ALJ erred in dismissing claimant's reported limitation in the ability to sit for long periods and finding claimant "could do the full range of sedentary work . . . [by] rel[ying] on the absence of contraindication in the medical records. The absence of evidence is not evidence."). Similarly, the only reported activities that the ALJ discusses are the fact that Ms. Stanley carries wood, water, and coal. AR 18. These activities are relevant to Ms. Stanley's ability to perform the strength demands of lifting and carrying (and show only what she cannot lift and carry, not

what she can). These activities do not shed any light on why the ALJ rejected Ms. Stanley's limitations in sitting, standing, and walking.

> Finally, the Court notes that a credibility finding alone is not dispositive of the case.
>
> > An ALJ's finding regarding the claimant's noncredibility does not compel a finding of not disabled. Rather, the credibility determination is just a step on the way to the ultimate decision. The ALJ must also determine whether the claimant has an RFC level and can perform the full range of work at his or her RFC level on a daily basis.

*Thompson*, 987 F.2d at 1491 (10th Cir. 1993) (citing *Frey v. Bowen*, 816 F.2d at 512–13); *see also Poppa v. Astrue,* 569 F.3d 1167, 1170–71 (10th Cir. 2009) ("The regulations require that an ALJ's RFC be based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints."); *Kerwin v. Astrue*, 244 F. App'x 880, 884–85 (10th Cir. 2007) (unpublished) (ALJ cannot base RFC on credibility assessment alone, but must provide specific, legitimate reasons for rejecting a medical opinion or limitation). Thus, even when an ALJ finds a claimant less than credible, the ALJ still must complete a function-by-function analysis. Indeed, an ALJ's "failure to consider an individual's ability to perform the specific work-related functions could be critical to the outcome of a case." SSR 96-8p, 1996 WL 374184, at *3.

## VI. Conclusion

The ALJ erred by not doing a function-by-function analysis. I remand so that the ALJ can conduct a proper function-by-function analysis. The Court does not reach Ms. Stanley's other claimed errors, as these "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 20) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent